Next case please. Okay, Mr. Leiter. May it please the Court, Counsel, my name is Thomas Leiter, and I'm the attorney for the appellant, The Leiter Group, Attorneys and Counselors, Special Corporation. The trial court's summary judgment in this case is fatally flawed and should be reversed. And with no disrespect to the trial court, the order, frankly, is replete with erroneous legal and factual conclusions. These are detailed in the brief, but a couple I'd like to highlight are the following. The judgment of the trial court is a judgment that this was a conversion of instruments case under the UCC 3420. That particular section of the UCC has no application to this case. The court cited five cases in support of its order, none of which have anything to do with 3420, conversion of instruments. One of those cases, however, the Farnes case, while not a conversion of instruments case, actually supports the defendant's position here that there was no conversion of funds of the plaintiff. Throughout the order, the court has misstated the UCC and fails to correctly apply relevant UCC provisions. References to holder in due course 3302 are improper. It failed to recognize the significance of a public filing of a security instrument. It failed to recognize what is value for purposes of holder in due course. It failed to recognize and properly cite the rights after default of a secured creditor. Further, the court on the legal side has ignored Supreme Court rule of professional conduct 1.15 and made no comment with respect to that. Ignored the Supreme Court ruling endowing with respect to attorney-retainers. And with respect to facts, the court frankly ignored the controlling facts in this case. That's detailed in our brief. I won't recite all of them in this argument, but a couple of them I think are certainly worth noting. There's no mention whatsoever of the written retainer agreement that our firm had with the client. That's a significant fact because it deals with whether or not value was given at the time the law firm received payment. Also, a very important fact that was not commented on by the trial court was that the security agreement, which is the basis for the plaintiff's claim, specifically allowed our client to continue to collect its accounts even in a case where the plaintiff was alleging that the client was in default. A provision of a security agreement specifically states, until otherwise notified by lender, grantor may collect any of the collateral consisting of accounts. No notice was ever given that they could not collect accounts. That's been admitted by the plaintiff, failed to respond to that. So that's a very important fact in this case. Also, the court failed to note that this was the second attempt by the plaintiff to collect the fees that were paid to, the amounts of money that were deposited to our trust account. The first effort was in a citation proceeding, which was dismissed by the trial court, although a different judge, and also noted, failed to note, that the plaintiff was given an opportunity to file a claim of fraud in that very proceeding, and they chose not to do that. I believe that the deficiencies in this order are well known to the plaintiff because they are aggressively seeking to dismiss this appeal. They attempted to do this on motion, and they devote a great amount of attention to this in their brief. And their claim is that, well, the order of July 8, 2013 did not dispose of all of plaintiff's claims, alleging that the claim of an award of prejudgment interest was not dealt with in that order. That's simply incorrect. It's a misstatement of fact. That order specifically awarded prejudgment interest, the interest rate, and the method of calculation. Their argument on the dismissal is that, well, they went into court in August and asked the court to calculate the interest that accrued on a prejudgment basis. And then they cite two cases, the Rago case, the Mallam case. Well, those cases don't apply to this fact because in both of those cases, the complaint that was filed did not make a request for prejudgment interest, and there was no mention of prejudgment interest in the court's order. Those cases simply don't apply. Now, this is a final judgment. The court has jurisdiction, and the order, recite a portion of it, states plus prejudgment interest at the rate of 5% per annum calculated on each converted check from the date of deposit plus cost of suit, and then they state execution by issue. There's no doubt that this is a final order, and the court has jurisdiction. Now, the plaintiff's brief is much like the court's order. It's silent on various facts. It's silent on controlling issues of law, misstates the law, for example, and fails to respond to these matters alleged in the defendant's brief. Not mentioning, not responding to these facts can be considered by the court as a concession. You're not bound by it, but you can consider it. No mention of the fact that the conversion of instruments is an improper finding by the court, that it does not apply. The plaintiff didn't respond to that. Furthermore, they made no response to the inappropriate and poorly cited cases that the court cited. The only thing that they can say is that, well, they're trying to distinguish the Farnes case, which actually supported the defendant in this case. So you have a very odd situation where the trial court tries to rely on Farnes, and the plaintiff is trying to distance itself from Farnes, taking opposite positions. Also, there is no response in the plaintiff's brief that the client continued to have the right to collect its accounts. No notice was ever given that they could not collect their accounts. Further, there's no response, no mention of Rule of Professional Conduct 1.15 with regard to retainers, that they're earned when paid. There's no mention of the Supreme Court case in Dowling that states the same thing. And there's no mention of the fact that the defendant paid from the client's trust account 20 different vendors. And one of those vendors was the plaintiff. Now, that is a fact that plaintiff says nothing about. No explanation of that. They also misstate the significance of public filing. They allege that that's notice for purposes of determining a holder in due course. And they cite a case, Signal Capital. That case is not on point. That Signal Capital case deals with priorities and has nothing to do with holders in due course. The plaintiff further says nothing about the dismissal of the citation proceeding, where they first tried to recover these funds from our firm. And they also say nothing about their failure to take advantage of the court's opportunity that they gave them to replete an alleged fraud. So these are matters which the plaintiff has said nothing about in this brief. I'd like to focus on two things here and highlight, while there are many errors in this judgment, there are two things I think I'd like to highlight, two fundamental errors. And what these errors deal with are the failure of the trial court to differentiate between deposits to an IOLTA trust account from payments from that account. And I believe that is a major contribution to the court's erroneous ruling. First, what the court ruled here is that our law firm accepted deposits at the direction of our client to be deposited to the client's trust account. That those deposits were subject to a perfected security interest in favor of the plaintiff. And therefore, the mere deposit of those accounts to the trust account constituted a conversion of all of those funds by our law firm. Frankly, that's patently wrong. There's no legal support for that proposition. It's contrary to the UCC, it's contrary to Rule 1.15, contrary to the ARDC handbook, and it's contrary to the ruling endowment. Those funds deposited to the IOLTA trust account belong to the client and it could not be a conversion by the attorney. The absurdity of this ruling is highlighted by the fact that, as I mentioned, one of these payments went to the plaintiff. So therefore, this ruling allowed the plaintiff to recover twice. They first got paid out of our trust account, and then the trial court comes along with this order and says, well, you have to pay them again because we're going to enter a judgment against you for that payment. If this ruling stands, I submit this will be the end of attorneys' trust accounts. There is actually no basis for this, and that alone should cause this court to reverse this judgment. Now, the second portion of this that he's mentioning, and that is that the real question here is whether or not payments to our firm for legal fees out of the trust account were proper. That's really the issue here. Well, the trial court got it confused, I think in part because the plaintiff tried to confuse it in his briefing and argument. The court ruled that, well, we were not holders in due course for the payments we received for attorney fees. Why? Two bases. One, that we didn't give value to the receipt. The other one was a notice requirement that they had filed their security interest. Okay, thank you. The fact is that value is given. There's a written retainer agreement here entered into in August of 2009 calling for a $60,000 nonrefundable retainer. Under 1.15 and Dowling, that retainer fee is earned when paid, whether or not any work is done. That is the Supreme Court rule. The trial court says nothing about Dowling, nothing about 1.15. It relies on Carter and Grimsley, a case decided by this court eight years earlier. Carter and Grimsley, I don't dispute the authority of Carter and Grimsley, even though Judge Holdren's dissented. But it's factually different, very factually different. In fact, this court in Carter and Grimsley said that there was no evidence of value given for that payment. And that's correct, there was no evidence of value. So this court concluded that there was no value given. And I submit in this case, under Dowling, 1.15, the evidence of value is the retainer agreement. The fact that we had a written retainer agreement, we wouldn't have taken this case, absent it. And under Dowling and 1.15, it's earned when paid, and that is the value. Perhaps counsel can explain all the things that they didn't respond to in their brief. You'll have an opportunity to do that. But the fact is, they did not respond to important questions of fact, the legal requirements of the Supreme Court rules, and the Supreme Court in Dowling. We believe the trial court's order is erroneous, both legally and factually, and should be reversed. Thank you. Any questions for Mr. Leiter? Okay, thank you. Thank you. Mr. Sorensen? Thank you. Good afternoon. May it please the Court of Counsel, I'm Jeff Sorensen, and I am the attorney for the plaintiff of the outbelieving Heartland Bank and Trust Company. In its brief, the Leiter Group has acknowledged, pages 15 and 16, that Heartland's perfected security interest continues in the proceeds of the checks that Ross Advertising, the Leiter Group's client, and a borrower of Heartland Bank endorsed over to the Leiter Group. And the policy issue I think the court has to address in deciding this case is whether the court wants to, by allowing an attorney to take an advance payment retainer or a classic security retainer, allow an attorney who is representing the debtor to receive checks that are otherwise subject to a perfected security interest held by that client's creditor, and allow the attorney to take priority in those checks over the claims of the creditor. And that's essentially what Mr. Leiter is arguing. He is arguing that because he took the $60,000 classic retainer, which the record shows he paid to himself from his IULTA account on December 9th and December 17th, five and 13 days after Heartland served a citation on him, he transferred those funds from the IULTA account to his general account, that that somehow makes him a holder in due course. Mr. Leiter pointed out many issues that he, in some cases I think, correctly identified that we have not responded to directly in our brief. But we responded to all of the arguments, I think, indirectly at least. We set forth the reasons why the judgment of the trial court was correct, and we explained why he is not a holder in due course under the Carter and Grimsley v. O'Malley trading case. And he also had argued in the trial court that he was essentially a transferee who took free of any security interest pursuant to 9-332B of the Uniform Commercial Code as adopted in Illinois. And in the brief, we explained the policy reasons why that should not be the case. That is clearly a section that only applies to a deposit account of the debtor. And here the transfers were not a transfer of funds, but the delivery of the checks. There was no transfer of funds from a deposit account of the debtor to the Leiter Group. If the Ross Advertising Group had deposited these checks into its own deposit account and written checks to the Leiter Group for a retainer for payment of fees, then we would not be arguing this holder in due course issue because I think 9-332B would apply in that circumstance. That's not what they did. They began depositing checks payable to Ross Advertising that were subject to a perfected security interest. And Mr. Leiter was engaged by Ross to deal with the various security agreements with respect to Hartland that are now the basis for our claim that we were a perfected holder of a security interest with respect to these instruments. So Mr. Leiter is in a unique position because he was representing Hartland's borrower in the underlying collection proceeding. And then he began taking checks that were payable to Ross Advertising and having Ross Advertising endorse them over to the Leiter Group. I think Mr. Leiter was correct when he said that some of the cases cited by the trial court in its judgment were not on point. This is not a case where Mr. Leiter does not have rights to the check. He simply took the check subject to parties with superior rights, such as Hartland, which had a perfected security interest in the checks. So that is, I think, an important distinction here. He took these checks, and unlike the cases cited by the court, we're not claiming that Ross Advertising didn't have the authority to endorse them over or that there was some forged endorsement or forged maker signature. This is a situation where Ross could endorse the checks over, but Leiter took the checks, unless it was a holder in due course, subject to Hartland's perfected security interest. How is that? And I guess this is a little bit what I'm struggling with. If Ross had deposited them into their checking account, their own checking account, and then wrote a check to the Leiter Group, their argument would hold water. But the nature of the trust account is that it isn't their account. It's Ross's money. They have the power of direction. He can't ethically do anything with this money unless directed. So it's in trust there, but it's still there. That's where I'm struggling a little bit, because the judge does not differentiate between just the retainer payments, but also payments that are made from that account to vendors, to you, to others. And those certainly are subject to the security agreement, but withholding the payments, the issuance of those checks, I don't know if that is within the Leiter Group's authority to do that. And I don't see any discussion or argument about them being able to say to Ross, you know, these checks can't go out. And that's a little bit of, I mean, certainly if it was, you know, you had already come in and frozen the bank account, Ross's bank account, but didn't take action to freeze or, you know, get a TRO against this account. And that's, I guess, a little of what I'm struggling. What authority is there to say that you have that says out of their trust account they had the right not to write these checks to other vendors? You know, just separating it a little. I don't have in front of me the precise amount of the checks that were payable by the Leiter trust account to third parties. But I would not dispute that perhaps that those checks, perhaps the bank should not have recovered those. But clearly the monies that were deposited into the trust account and then ultimately transferred from the trust account to the general account to the Leiter Group, those funds are subject to the bank's security interest. I think with regard to the third parties, they are taking payment pursuant to a check drawn on the Leiter trust account. And, again, they would be a holder in due course unless the provisions of the holder in due course section of the UCC are not satisfied. In other words, they did not take the check for value. And that's one of the arguments we've made, that the Leiter Group, if you look at the section in our brief that addresses the various balances and the amount of legal fees that were billed and the amounts in the trust accounts when the transfers were made, the Leiter Group, well, first of all, it paid itself $60,000 in December of, I believe, 2009 after being served with a citation. What's the operative fact here? Is it the security, perfected security interest or the citation to discover assets that invalidates the $17,000 transaction and the $43,000 transaction? What invalidates it is the fact that Leiter had knowledge of the bank's security interest. He had knowledge because he's arguing the cases. So are you saying the citation had no effect? Because I think in supplementary proceedings, that citation would freeze assets for six months until the hearing on the citation could be held. So were these amounts withdrawn before the hearing on the citation was held? They were withdrawn before the hearing on the citation was held. Okay, and you don't think the citation has any effect on that? You're saying it's the perfected security interest, that they took this money knowing that they were accounts receivable from Ross? Yes. Yes, and that they are not a holder in due course of the instruments and that they do not obtain holder in due course by essentially putting the money, taking the intermediate step of depositing the funds into their IOLTA account. The purpose of the IOLTA account is not to sort of launder, for lack of a better word, and I think that's the policy issue that the court has to wrestle with in terms of deciding this case. So you're telling me it's okay to launder the funds that are going to go to people who are owed money? I'm not saying it's okay to launder the funds. What I'm saying is that the people who are receiving this, the third parties who are receiving the funds via checks drawn from the Leiter IOLTA account. So the conversion theory is that the Leiter group can't take money out of that account and pay anyone, whether it's them or somebody else? As I said, there may be a distinction between payments to third parties and payments to the Leiter group. Payments, you know, to the extent that monies are paid to the third party and the Leiter group never had received a benefit, that amount perhaps the trial court made in error. But the third parties are protected because they have holder in due course status. If we think they do not have holder in due course status, it becomes our obligation to pursue claims against them, which we have not done. We're not disputing that. The third parties that really were only disclosed to us in response to some of the judgment motion, I think the amount was $10,000 or $12,000. If Leiter had withdrawn the $60,000 and two transactions, 43 and 17, on the day before they got the citation, your theory is the same? Theory is the same. It has nothing to do with the service of the citation but only the perfection of the security. That's right. And the fact that they were on notice of the bank's perfected security interests. Tell me how they got notice of that. Well, they were the attorney for Ross Advertising and were representing Ross Advertising in the bank's collection action, in the bank's effort to enforce the very security agreements that give rise to the perfected security interests that we're claiming. What date did that security interest become perfected? They went out of business in September? Yes, Your Honor. I do not have that date in front of me. It's in the record, and I apologize. But it was certainly prior to the receipt by the Leiter group of the checks it issued in this case, which began in September, I believe. When the retainer agreement was entered into between Leiter and Ross, was there already perfected security interest? There was already perfected security interest, yes. So you're saying anything the Leiter group received in the form of accounts receivable? Yes, yes. Proceeds of Heartland's collateral, checks that are Heartland's collateral. Leiter takes all of those, unless it's a holder in due course, and one of the holder in due course issues is value. And our position is that a classic retainer, even though we don't dispute that under 1.15, it's earned. There's no services rendered prior to that. It's basically a promise. The problem here is if that retainer fee had been paid in cash but not a check. Correct. Then there isn't a problem. Am I following you? That's correct. That's correct. I was confused by your graph or your chart here that preceded the date of the service of the citation. You start with the first amount of deposit, September 23, 2009. So really, again, I just want to make sure I understand this. The date of the service of the citation has nothing to do with any of this. I don't think ultimately it has. It's dispositive. I think that he was already on notice, the Leiter group was already on notice of the security agreements that its client, Ross Advertising, had entered into with Heartland Bank. That was the subject matter of the prior cases between Heartland and Ross, I think several of which have been before this court. I know the court's issued at least one published decision. I don't mean to interrupt, but I know your time is restricted and I want to follow up on Justice O'Brien's question. If a bank had gotten served with that citation, they wouldn't have been able to allow any monies to be withdrawn. Correct? That's right. But what Leiter did is, the only relevance to the citation is they have the security. They knew about the protected security interest. Then they get the citation. So they've got kind of a double whammy and they still take the money. That's right. I think the relevance of the citation is regardless, at the time the citation was served, Leiter's on notice while these funds are still in their trust account. Then they continue to receive checks after that date that they are... It's not the receipt of the check that's the problem. It's the processing. It's the processing. It's the withdrawal of the check. It's paying themselves from the proceeds of those checks. Well, really it's a problem to pay anybody else too, but that other person becomes a holder in due course. Correct. So you can't proceed with a theory of conversion against that person. Exactly. Unless we feel that they have evidence, we feel we have sufficient evidence otherwise of the check issued by the Leiter IELTS account. So in light of your arguments today, are we now thinking that instead of $120,000, there's only $60,000? No. To be candid, I'd have to go back and look at what is in the response to the summary judgment motion. They did identify transfers of proceeds from these checks that were to entities other than the Leiter group, and I think that number is around $10,000 or $12,000. It might be slightly more, but I do not believe it's $60,000. Thank you. Thank you. Any other questions? Thank you, Mr. Swanson. Mr. Leiter? I have a question for you, Mr. Leiter. Were there withdrawals that exceeded $60,000? Pardon me, ma'am? Were there withdrawals from the Leiter group to the Leiter group that exceeded the $60,000 retainer? Yes, there were. They're all documented in the billings. The $60,000 represents payment of the non-refundable retainer fee under the retainer agreement entered into in August. But did the fees that you billed them exceed that $60,000? Yes, they did. In fact, I think in the response to the motion for a summary judgment, I think that they exceeded the $60,000, but then there was additional amounts owed that were never paid in excess of $100,000. I think it was $89,000. I'm sorry? I think it was $89,000. Let me say this. The council's response here to these questions is a demonstration of the fog that was put over the trial court, and the council continues to try to fog this court. The responses really are disingenuous. The fact is the citation has nothing to do with this issue. None whatsoever. The citation was dismissed, and the court ruled very specifically that— When was it dismissed? It was dismissed in June. Six months after it was served. Actually, I think it was in excess of that, but the court order said that it has nothing to do with transfer of money and that it will not be operative to have any effect on any transfers. In other words, the citation's a nullity for purposes of this particular case, and the plaintiff was denied any relief in that citation proceeding. The same issue was raised in the citation proceeding, and the court said no, we're not going to allow anything with respect to that. But Mr. Sorensen said that's a justice right, correct? That he didn't think it had anything to do— I thought he responded several times that he didn't think the citation had anything to do with the security interest or the payments or anything. I don't think he was being disingenuous. I think he answered just like you said. Yes, the court order says any activity—this is the December order. Pardon me, not the December order, but the June 2011 order. June 30, 2011 says the citation is terminated. The citation was not and will not be extended. Therefore, any activity or transferring of money or assets was not and is not subject to the December 4, 2009 citation. That was the order of the court. A different judge, mind you, but the order of the trial court. Citation has nothing to do with this. This is strictly an issue with respect to the Uniform Commercial Code and the effect of a security agreement. And I'd like to point out that the only record notice with respect to this claim is the filing of the Uniform—UCC-1, Uniform Commercial Code. That is specifically not noticed for purposes of determining whether a person is a holder in due course. It's specifically excluded under 3302B. So the filing of the UCC does not provide notice. What about the notice that was sent on October 22? Yes, October 22. That was a letter to our clients in which they said that we want your loan paid off by November sometime. And if you don't pay it off, we're going to proceed against the guarantors. That's what it said. It didn't say that you couldn't transfer money. It didn't say that we're going to collect on your collateral. It didn't say that. It didn't say that they couldn't collect their funds. I'll see you in one minute. That their funds, and under the security agreement, the very agreement they're trying to enforce, says unless otherwise notified by lender, grantor may collect any of the collateral consisting of accounts. So the plaintiff could have, but didn't. Could have, they chose not to, maybe for good reason, to prevent and try to go after money that was coming into Ross Advertising. They didn't do it. So they were specifically allowed to collect those funds. Those funds were deposited to the IOL Treaty and Trust Account, which was the Ross's money, not our money. But you're not a bank. Pardon me? You're not a bank. We're not a bank. That's correct. Why are they bringing these checks to you? I mean, if they are, then why aren't you keeping them just for your fees? Well, no, that's not correct. And maybe it's my fault that's interfering. Well, attorneys receive money in their trust account for a variety of reasons. And those deposits, out of that, were paid out funds on behalf of the client. Sometimes they're paid to the attorney for fees. And very frequently, as recognized by the UCC, those are subject to a prospective security interest. The UCC protects all of those deposits and does not prevent or does not extend that security interest beyond that account. Now, your time is up. You may finish because you need to help me understand. Okay. So payments from the IOLTA trust account, it's no different than an account at a different bank. They're paid at the direction of the client. We can only, under our ARDC rules, do what the client tells us to do with their funds. They told us to pay various bills. They told us to pay our fees, which we did. And when we receive fees, that's the only issue in this case, really. Can the client compel you to accept those checks? Can they? No. I mean, they can say. Why would you accept checks, just for an example, in amounts that exceeded what you were owed? Or why wouldn't you pay yourself first? We didn't pay ourselves first. We accepted. Why wouldn't you? Why wouldn't we have paid ourselves first? Why are you taking money at the direction of the client that you don't have to take and then paying it out? Why are you? I just don't understand why you're doing that. Is that what you do for all your clients? Well, no, but I mean, many attorneys, it's a very common practice to accept money that is owed to the client's deposit at the trust. It could be a personal injury case. And those receipts are subject to liens and so forth. And under this court ruling, if we accept those funds, it's a conversion by us. That's what the court ruled. Upon the deposit of those funds, we've now converged those funds. As I say, if that ruling stands, then that will be the end of an attorney's trust account. See, I am at a handicap because my esteemed colleagues were in private practice. I've always been on the public payroll, so that's why I'm confused by this. So other law firms routinely accept account receivable checks from businesses they represent and then help those businesses pay their bills? Well, I wouldn't say it's a common practice, but it's not uncommon. I mean, we often receive funds on behalf of the client in injury cases. And I can understand that, settlement funds. But these were not those kinds of funds. No, they weren't. They were regular receivables. The client previously banked at this bank, okay? Well, under UCC, if they continued to bank at that account, that bank could actually set off and just take those funds. See, I understand that. I do understand that. And that's a special privilege given to a lender in a deposit relationship with the borrower. Okay. And so the client could not continue to bank at this institution, so it had to go somewhere else. It had receipts. The judge found when you took those checks that was conversion. That's what he said. He said, if we deposit those funds into our account, we convert it. The fog has lifted. You've assisted me. Thank you. I don't know if there's any other questions. Okay. Questions? Okay. Thank you, Mr. Noida. Thank you. We thank both of you for your arguments this morning and afternoon. And we will take the matter under advisement, issue a written decision as quickly as possible. The court will now stand in very brief recess for a panel of judges.